IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TYSON BLUE, on behalf of himself and all others similarly situated, | ) | CASE NO.: 3:24-cv-00836 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| V. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR** |
| INOAC EXTERIOR SYSTMS, LLC | ) | **COURT SUPERVISED NOTICE TO** |
| | ) | **POTENTIAL OPT-IN PLAINTIFFS,** |
| Defendant. | ) | **TOLLING, AND EXPEDITED** |
| | ) | **DISCOVERY** |

Plaintiff Tyson Blue, on behalf of himself and all others similarly situated, respectfully moves this Honorable Court, pursuant to 29 U.S.C. § 216(b), and Fed.R.Civ.P. 26(d) and 83(b), for an Order issuing Court-Supervised Notice and implementing a procedure, described in the accompanying Proposed Order (Exhibit 8), whereby potential opt-in plaintiffs will be notified of Plaintiff's FLSA claims and given an opportunity to join this action as party plaintiffs.

Plaintiff seeks to send Notice to the following potential opt-in plaintiffs:

> All former and current non-exempt hourly manufacturing/production employees of INOAC Exterior Systems, LLC employed at the Fremont, Ohio facility between May 9, 2021 and April 30, 2025.

Such relief is appropriate for the reasons discussed in the attached Memorandum in Support.

Respectfully submitted,

 /s/ Chastity L. Christy
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard

i

Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
chastity@lazzarolawfirm.com
anthony@lazzarolawfirm.com
*Attorneys for Plaintiff*

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS, TOLLING, AND EXPEDITED DISCOVERY**

## I.      INTRODUCTION

On May 9, 2024, Plaintiff Tyson Blue filed his Class and Collective Action Complaint against INOAC Exterior Systems, LLC as a result of Defendant's practices and policies of failing to pay its hourly, non-exempt employees, including Plaintiff, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.SC. 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.    (Doc. 1.) Specifically, Plaintiff alleges that he and other and other similarly situated manufacturing/production employees were only paid for work performed between their scheduled start and stop times, and were not paid for the following work performed before and after their scheduled start and stop times: a) obtaining and changing into and out of their personal protective equipment, including, but not limited to, safety glasses, gloves, earplugs, Tyvec paint suit, company issued shirts, steel-toed boots, and respirator; b) getting work instructions and/or assignments; c) twice a month company meetings; d) walking to and from their assigned area of the manufacturing/production floor; e) performing their production/manufacturing work; and/or f) showering after their shifts.  (Doc. 1).

After extensive discovery relating to similarly-situated individuals, Plaintiff files this Motion seeking to send Notice to the following potential opt-in plaintiffs:

> All former and current non-exempt hourly manufacturing/production employees of INOAC Exterior Systems, LLC employed at the Fremont, Ohio facility between May 9, 2021 and April 30, 2025.

As shown hereinbelow, the similarly situated discovery produced by Defendant shows that there is a strong likelihood that the potential opt-in plaintiffs in this FLSA collective action are similarly situated with respect to Plaintiff's claims, that they were subjected to the same FLSA violating policy, and that their potential claims would be unified by common theories of Defendant's statutory violations.  In other words, the potential opt-in plaintiffs would have causes of action that accrued in the same manner as those of Plaintiff Tyson Blue.  If Plaintiff is later, at the appropriate time, able to prove Defendant's FLSA violations, the FLSA violations would also apply to potential opt-in plaintiffs because Defendant's policies, practices, and procedures apply equally to Plaintiff and the potential opt-in plaintiffs.

## II.    COURT-SUPERVISED NOTICE IS APPROPRIATE WHERE THERE IS A STRONG LIKELIHOOD THAT SIMILARLY SITUATED EMPLOYEES EXIST

The Sixth Circuit has prescribed a two-stage process for identifying potentially similarly situated plaintiffs and determining whether the notified employees who have given notice of their desire to opt in as plaintiffs are, in fact, similarly situated to the named plaintiff and each other. *Hamm v. Acadia Healthcare Co.,* No. 3:21-CV-00550, 2025 WL 919453, at *2 (M.D. Tenn. Mar. 26, 2025), citing *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003, 1010-11 (6th Cir. 2023); *Polen v. JSW Steel USA Ohio, Inc.,* 699 F.Supp.3d 622, 626 (S.D. Ohio 2023); *Murphy v. Kettering Adventist Healthcare*, No. 3:23-cv-69, 2023 WL 6536893, *4 (S.D. Ohio Oct. 5, 2023).

For the court to authorize notice, Plaintiff must show "a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark,* at 1011.  This requires a showing "greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*  However, as Judge White pointed out, "this does not mean the standard is necessarily higher than all prior applications of the earlier standard." *Clark*, 68 F.4th at 1020 (White, J., concurring and dissenting).  As the *Clark* court explained, its analogy

2

to the preliminary injunction standard is appropriate specifically because both determinations are "provisional"—they take place before the factual record is fully developed. *Clark*, 68 F.4th at 1011. The decision to permit the distribution of a court-supervised notice to potential opt-in plaintiffs "'has zero effect on the character of the underlying suit,' but rather acts as a green light for the sending of court-approved written notice to employees." *Simpson v. Adena Health Sys.*, No. 2:23-cv-02633, 2024 WL 3418137, *1 (S.D. Ohio July 15, 2024), quoting *Clark*, 68 F.4th at 1009). "In this way, the focus is properly shifted away from whether a group of plaintiffs should, substantively, become parties to the FLSA suit, and back toward the court's facilitation of awareness to those who can choose to opt-in." *Id.* A court may "provide notice to employees who *might* be similarly situated to the original plaintiffs, and who thus might be eligible to join the suit." *Doe v. Coliseum, Inc.,* No. 2:20-CV-10845-TGB-MJH, 2024 WL 4370972, at *2 (E.D. Mich. Sept. 30, 2024), quoting *Bryant v. Domino's Pizza*, No. 22-11319, 2024 WL 1638616, at *4 (E.D. Mich. Apr. 16, 2024) (Michelson, J.) (emphasis in original) (internal citations omitted). "[L]ater, when the record is more developed, the Court [is to] make a 'final similarity determination.'" *Heeg v. United Elec. Contractors, Inc.,* No. 1:21-CV-796, 2023 WL 7295153, at *5 (W.D. Mich. Nov. 6, 2023).

Despite *Clark's* clarification of the standard at this stage, "the question is still whether the potential plaintiffs are similarly situated to the named plaintiffs[,] and [a]lbeit under a new name, the court's first take at answering this question **is still subject to more lenient scrutiny**" as the first stage occurs while the body of evidence is necessarily incomplete. *Simpson*, 2024 WL 3418137, *2. "Indeed, '*Clark* emphasized a district court's 'practical' inability to make 'conclusive[ ] ... 'similarly situated' determinations as to employees who are in no way present in the case' given the fact bound nature of such a question." *Simpson*, 2024 WL 3418137, *2 (quoting

*Clark*, 68 F.4th at 1010).  To the contrary, it is not until "step two of the inquiry, which occurs after the close of discovery, [that] the court makes a conclusive determination as to whether the named plaintiff is "in fact similarly situated" to the opt-in plaintiffs." *Murphy*, 2023 WL 7515517, *4.  After notice has been sent to other employees and "when merits discovery is complete[,] ... the court takes a closer look at whether those 'other employees' are, in fact, similarly situated to the original plaintiffs." *Clark,* 68 F.4th at 1008.  "At this [first] stage, then, this Court puts more emphasis on cases evaluating the first provisional step as opposed to those analyzing the more stringent final certification hurdle." *Simpson*, 2024 WL 3418137, *2.  The Sixth Circuit—acknowledging that the facts and record of an action may not yet be fully developed at the notice-determination stage "has explained that ... movant[s] merely must 'demonstrate to a certain degree of probability' that [they] will prove ... the employees are 'similarly situated' when the court issues its final decision." *Hogan v. Cleveland Ave Rest., Inc.*, 690 F. Supp. 3d 759, 772 (S.D. Ohio 2023), quoting *Clark*, 68 F.4th at 1011).

## III.    THE SIMILARLY SITUATED STANDARD HAS NOT CHANGED POST-*CLARK*

"*Clark* does not disturb the traditional meaning of 'similarly situated.'" *Polen,* 699 F.Supp.3d. at 527.  For purposes of the FLSA, "[s]imilar, of course, does not mean identical", "and 'similarly situated' 'is less stringent than [the] Rule 20(a) requirement that claims 'arise out of the same action or occurrence' for joinder to be proper, or even Rule 23(b)(3)'s requirement that common questions predominate for a Rule 23(b)(3) class to be certified.' " *Id*. at 528, quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009).  "Although the FLSA itself does not define "similarly situated," district courts have tended to consider a number of factors." *Polen v. JSW Steel USA Ohio, Inc.*, 699 F. Supp. 3d 622, 628 (S.D. Ohio 2023).

Factors included most frequently among these are "[1] the factual and employment settings of the individual[ ] plaintiffs, [2] the different defenses to which the plaintiffs may be subject on an individual basis, [3] the degree of fairness and procedural impact of [approving] the ... collective action[.]" *Doe v. Coliseum, Inc.,* No. 2:20-CV-10845-TGB-MJH, 2024 WL 4370972, at *2 (E.D. Mich. Sept. 30, 2024), citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). *See also*, *Hamm v. Acadia Healthcare Co.,* No. 3:21-CV-00550, 2025 WL 919453, at *3 (M.D. Tenn. Mar. 26, 2025), quoting *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017).

No single factor is determinative of whether Plaintiffs and the potential opt-in plaintiffs are similarly situated. *Gifford v. Northwood Healthcare Grp., LLC*, No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023), reconsideration denied, No. 2:22-CV-4389, 2023 WL 6845198 (S.D. Ohio Oct. 17, 2023). "Instead, the court endeavors to ensure that 'collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."'" *Gifford v. Northwood Healthcare Grp., LLC,* No. 2:22-CV-4389, 2023 WL 5352509, at *3 (S.D. Ohio Aug. 21, 2023), <u>reconsideration denied,</u> No. 2:22-CV-4389, 2023 WL 6845198 (S.D. Ohio Oct. 17, 2023), quoting *Clark*, at 1012, quoting *Hoffmann-La Roche*, 493 U.S. at 170).

Employees may be found to be similarly situated if they "suffer from a single, FLSA-violating policy" **or** if their "claims [are] unified by common theories of defendants' statutory violation, even if the proofs of these theories are inevitably individualized and distinct." *Id.*, citing *O'Brien*, *v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009) ("[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all

5

the plaintiffs.") (Emphasis added.); *Doe v. Coliseum, Inc.,* No. 2:20-CV-10845-TGB-MJH, 2024 WL 4370972, at *2 (E.D. Mich. Sept. 30, 2024); *Heeg v. United Elec. Contractors, Inc.*, No. 1:21-CV-796, 2023 WL 7295153, at *16 (W.D. Mich. Nov. 6, 2023); *see also Piddock v. Cmty. Living Network*, No. 22-CV-10715, 2024 WL 2235604, at *3 (E.D. Mich. May 15, 2024).

"Showing a 'unified policy' of violations is not required." *Id.* (internal citation omitted). Similarly situated opt-ins "are those whose causes of action accrued in approximately the same manner as those of the named plaintiff." *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011).  Thus, the strong likelihood of similarity is satisfied when proof of either policy or Defendants' conforming conduct would therefore "prove an FLSA violation as to *all* members of the proposed collective[.]" *Doe v. Coliseum, Inc.,* No. 2:20-CV-10845-TGB-MJH, 2024 WL 4370972, at *3 (E.D. Mich. Sept. 30, 2024), quoting *Rayford v. Mobile Phlebotomy of Cent. Michigan LLC*, No. 1:23-CV-13012, 2024 WL 1435211, at *3 (E.D. Mich. Apr. 3, 2024), quoting *Dove v. Corewell Health*, No. 1:23-CV-182, 2023 WL 6548556, at *2 (W.D. Mich. Oct. 6, 2023) ("This 'strong likelihood' of similarity is satisfied when a plaintiff alleges a single FLSA-violating policy, 'and ... proof of that policy[,] or of conduct in conformity with that policy[,] proves a violation as to all the plaintiffs.'").

## IV. PLAINTIFF HAS SATISFIED HIS BURDEN OF SHOWING THAT THERE IS A STRONG LIKELIHOOD THAT THE POTENTIAL OPT-IN PLAINTIFFS IN THIS FLSA COLLECTIVE ACTION ARE SIMILARLY SITUATED

More than sufficient information exists in the present collective action to establish that there is a strong likelihood that Representative Plaintiff Tyson Blue and the potential opt-ins are similarly situated.

A.      **Defendant's Rule 30(b)(6) Corporate Representative Testified That All Manufacturing/Production Employees are Similarly Situated with Respect to Orientation, Policies, Practices, Procedures, Timekeeping, Payroll, and Daily Pre-Shift Activities.**

Subject to a Notice of Rule 30(b)(6) Deposition, Defendant produced Cyle Hardymon to testify as its corporate representative with respect to topics covering the issue of "similarly situated".  Mr. Harmon testified:

- All hourly manufacturing/production employees are subjected to the same policies, procedures, and practices regarding their work hours.  (Ex. 1, Cyle Hardymon Depo., p. 65.)

- All hourly manufacturing/production employees are subjected to the same orientation training.  (*Id.* at pp. 67-70; Exhibits 4 and 5, Orientation Training Packet (exhibits 2 and 3 to Hardymon Depo.))

- All hourly manufacturing/production employees are subjected to the same policies, procedures, and practices as it relates to personal protective equipment ("PPE"). (Ex. 1, pp. 58-59.)

- All hourly manufacturing/production employees are required to wear PPE.  (*Id.* at pp. 47, 53-59.)

- All hourly manufacturing/production employees are subjected to same timekeeping policies and procedures.  (*Id.* at p. 39.)

- All hourly manufacturing/production employees utilized the same time clocks.  (*Id.* at pp. 42-44.)

- All hourly manufacturing/production employees are subjected to the same restriction that employees are not permitted to clock-in any sooner than seven (7) minutes prior to their shifts.  (*Id.* at pp. 36, 39.)

- All hourly manufacturing/production employees are subjected to the same rounding policy as it relates to their clock-in time.  (*Id.* at pp. 34-36, 38-40.)

- All hourly manufacturing/production employees are subject to the same pay policy, procedures, and practices.  (*Id.* at pp. 39-40.)

- All hourly manufacturing/production employees enter through the employee hallway and wear safety glasses and earplugs.  (*Id.* at pp. 44-46.)

- All hourly manufacturing/production employees engage in the same pre-shift work routine – they walk through the door to the production floor, obtain and put on PPE, walk to the time clock, clock in, meet with their supervisors to find out where they are stationed for the day, and walk to their stations.  (*Id.* at pp. 44-46.)

- All hourly manufacturing/production employees attend daily pre-shift meetings with their supervisors.  (*Id.* at pp. 82-83.)

- All hourly manufacturing/production employees are required to be at their workstations at the start of their shift time.  (*Id.* at pp. 64-65, 74.)

- All hourly manufacturing/production employees are required to attend the all employees meetings that were to be held monthly.  (*Id.* at pp. 80-81.)

- All hourly manufacturing/production employees have the same break policies, procedures and practices.  (*Id.* at pp. 59-61.)

Moreover, Mr. Hardymon admitted that, because of Defendant's policy that all hourly manufacturing/production employees were required to be at their workstations by the start of their shift start time, they would need to be at work early in order to obtain PPE, put on their PPE, walk to the production floor, meet with their supervisor to find out what station they would be working at, and walk to their station.  (Ex. 1, pp. 74-75.)

8

**B.      Representative Plaintiff Tyson Blue Testified that He and the Potential Opt-In Plaintiffs are Similarly Situated.**

Plaintiff Tyson Blue testified:

- He was employed at INOAC as a manufacturing/production employee in various positions, and worked almost every position at the facility.  (Ex. 2, pp. 12-13, 20-21, 27, 38-43, 126-127, 136, 147-148, 175.)

- He went through INOAC's orientation with other employees.  (*Id.* at pp. 21, 24, 26.)

- He was required to wear PPE as part of his employment in every position he worked.  (*Id.* at pp. 12-15, 50-51, 54-56, 72, 76-77, 80-81, 89-90, 94, 101, 117, 149-150, 153-156, 159-160, 165, 167, 171-172, 178, 185.)

- Every manufacturing/production employee was required to wear PPE as part of their employment.  (*Id.* at pp. 121, 149-150, 153-156.)

- He was not paid for the time he spent obtaining, donning, and doffing PPE before and after his daily shift.  (*Id.* at pp. 12-15, 54, 72, 76-77, 80-81, 89-90, 94. 163-164, 207.)

- His position and other manufacturing/production positions were similar.  (*Id.* at p. 121.)

- All manufacturing/production employees had daily meetings before their shifts began, and employees would be told, among other thing, where they would be working that day.  (*Id.* at pp. 123-124, 148.)

- In addition to their daily meetings, all manufacturing/production employees were required to attend two mandatory meetings a month for 25-30 minutes, for which they were not paid.  (*Id.* at pp. 130-131, 137-138, 159.)

Plaintiff testified "So, again, I know from my own paychecks, though, I mean, I would clock in, whether I clocked in at 5:45, 5:55, 5:40, I would get paid from 6:00 to 2 pm for a straight eight." (*Id.* at p. 81.)

Q.      So would you relieve a specific person when you came in or was it just jump on to..

A.      So, yeah, we would.  They were rotating shifts.  Like they're still there working until we get done with our meeting, like staying on the machines or just standing there not moving the line waiting for us to get done so we can come over and hop in their spot.

(*Id.* at p. 123.)

### C.      The Documents Produced by Defendant Show that All Manufacturing/Production Employees are Similarly Situated

Defendant's time and pay records show that Plaintiff was primarily only paid for work performed between his scheduled shift start and end times and not his clock-in and clock-out times and/or for pre- or post-shift work performed before his scheduled shift start and end times (8 or 12 hour shifts).  (See Exhibits 3A-C, attached to Exhibit 3, Chastity Christy Declaration.)

In addition to Plaintiff's time and payroll data and documents, Defendant has produced time and payroll data and documents for a random sample of non-exempt hourly employees employed in all manufacturing/production departments at the Fremont, Ohio facility from May 2021 through March 2025.  With respect to the data produced it is clear that:

- All non-exempt hourly manufacturing/production employees' time was tracked by Defendant in the same manner as Defendant tracked Plaintiff's time.  (Ex. 3, ¶20(a) and examples attached as Exhibits 3D and 3E.)[1]

---

[1] The time and pay data is voluminous.  Defendant has stipulated to the authenticity of the information and documents produced during discovery, including the time and pay data and documents.  Plaintiff has attached a few examples to show this Court, but the records are substantially similar, and nearly identical, for all non-exempt hourly manufacturing/production

- All non-exempt hourly manufacturing/production employees were paid in the same manner as Plaintiff Tyson Blue. (*Id*. at ¶20(b); Exhibits 3D and 3E.)

- All non-exempt hourly manufacturing/production employees were paid primarily only for the period of time between their scheduled shift start times and scheduled shift end times, not their clock-in or clock-out times, or any work performed prior to and/or after their scheduled shift times.  (*Id*. at ¶20(c); Exhibits 3D and 3E.)

- All non-exempt hourly manufacturing/production employees had their time rounded to the nearest 15 minutes.  (*Id*. at ¶20(d); Exhibits 3D and 3E.)

- For the most part, all non-exempt hourly manufacturing/production employees were following the directive to not clock-in more than seven (7) minutes prior to their scheduled shift times.  (*Id*. at ¶20(e).)

- All manufacturing/production employees were primarily paid for the time of their scheduled shifts (for example 8 or 12 hours), rather than for the time they were actually performing work, including pre- and post-shift work, such as a) obtaining and changing into and out of their personal protective equipment; b) getting work instructions and/or assignments; c) twice a month company meetings; d) walking to and from their assigned area of the manufacturing/production floor; e) performing their production/manufacturing work prior to their scheduled shift times; and/or f) showering after their shifts.  (*Id*. at ¶20(f).)

(Ex. 3, Christy Declaration, ¶20(a)-(f); Ex. 3D; Ex. 3E.)

---

employees.  Plaintiff will file additional records if this Court believes more records are necessary to make a determination.  The names of employees have been redacted to protect their identities since they are not currently named Parties and have not been made aware of this lawsuit.

In addition to Defendant's 30(b)(6) Representative testimony stating such, Defendant instructs all non-exempt hourly manufacturing/production employees during orientation that they "are expected to be at their workstation, ready to work at the start of their shift. For example, if you start work at 6:00 am, you are expected to clock/swipe in and be ready for work, at your workstation by 6:00 am." (Ex. 4, Orientation Materials at INOAC-TB-000149.)

The testimony of Defendant's corporate representative, Plaintiff's testimony, and the documents produced by Defendant are more than sufficient evidence to show that there is a strong likelihood that Plaintiff and all hourly non-exempt manufacturing/production employees at the Fremont, Ohio facility are similarly situated.  The evidence shows that they have the same unifying theory of Defendant's alleged FLSA violations – only paying non-exempt hourly manufacturing/production employees for work performed between their scheduled shift start and end times and failing to pay them for pre- and post-shift work, rounding employees' time to the nearest 15 minutes while not permitting employees to clock-in any earlier than seven (7) minutes prior to their shift start times.  Defendant's own 30(b)(6) corporate representative testified that all non-exempt hourly manufacturing/production employees would need to arrive at work early in order to perform the pre-shift work and that they were required to be at their work stations, ready to work, at the start of their shift.  (Ex. 1, pp. 44-46, 64-65, 74-75, 82-83.)  The time records prove that Defendant was paying non-exempt hourly manufacturing employees only for the period of time between their scheduled shift start times and end times – when they were required to be at their work stations already ready for work.  (See Exhibit 3A-E.)

Indeed, Courts in this Circuit post-*Clark* have now frequently found that a plaintiff has satisfied the *Clark* standard based on less evidence - Plaintiff submitting declarations from other existing opt-in plaintiffs. *See, e.g., Polen v. JSW Steel USA Ohio, Inc.,* 699 F.Supp.3d 622 (S.D.

12

Ohio 2023); *Simpson v. Adena Health Sys.*, No. 2:23-cv-02633, 2024 WL 3418137, *1 (S.D. Ohio July 15, 2024); *Hale v. Landmark Recovery of Ohio, LLC*, No. 3:22 CV 2011, 2023 WL 6888900, (N.D. Ohio Oct. 19, 2023); *Murphy v. Kettering Adventist Healthcare*, No. 3:23-cv-69, 2023 WL 6536893, *4 (S.D. Ohio Oct. 5, 2023). In the instant case, the evidence was produced directly from Defendant and Defendant's own admissions in its 30(b)(6) corporate deposition.

This Honorable Court should grant Plaintiff's Motion for Court-Supervised Notice as Plaintiff has shown that there is a strong likelihood that he and the putative class are similarly situated.

## V. NOTICE SHOULD BE ISSUED TO THE CLASS IDENTIFIED BECAUSE EQUITABLE TOLLING IS APPROPRIATE UNDER THE SIXTH CIRCUIT'S HOLDING IN *CLARK*

The class to whom notice should be sent should be for those non-exempt hourly production employees who were employed at that Fremont, Ohio facility between May 9, 2021 and April 30, 2025, which is when manufacturing and production employees ceased being employed at the facility according to the testimony of Mr. Hardymon.

While the *Clark* Panel disagreed on a number of issues, there was no disagreement with respect to equitable tolling. Judge Bush concurred specifically to stress the importance of equitable tolling:

> I fully join the majority opinion but write separately because equitable tolling should be made available to plaintiffs in collective actions under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. The statute of limitations for FLSA actions is usually two years. 29 U.S.C. § 216(b). The heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit. As a result, many potential plaintiffs may not learn of the FLSA action until after the limitations period for some or all of their claims has run.

*Clark* at 1012 (Bush, J., concurring). Judge White, concurring in part and dissenting in part, wrote:

"I thus agree with Judge Bush that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs." *Id*. at 1017 (White, J., concurring and dissenting).

An equitable tolling provision "is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). The decision to invoke equitable tolling lies solely within the trial court's discretion. *Penley v. NPC Int'l, Inc.,* 206 F. Supp. 3d 1341, 1347 (W.D. Tenn. 2016) (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

In FLSA collective actions, the statute of limitations period for a potential plaintiff continues to run until he or she files a written consent to join the action. *See* 29 U.S.C. § 256(b); *Albright v. Gen. Die Casters, Inc.*, 5:10-CV-480, 2010 WL 6121689, *2 (N.D. Ohio July 14, 2010) ("under the FLSA a putative plaintiff must affirmatively opt into the class"). Thus, "[a]s the Supreme Court noted in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the inherent benefits of the collective action 'will disappear' if plaintiffs are not notified of the suit before their statute of limitations expires." *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. CV-08-803, 2008 WL 4446539, *22 (D. Ariz. Sept. 29, 2008).

Given the inevitable delay that *Clark*'s heightened burden has and will further create, as recognized and recommended by two of the three Judges who decided *Clark*, this Court should toll the statute of limitations for potential plaintiffs and issue Notice to all members of the Class. The claims of punitive class members are being lost daily, through no fault of their own, simply due to the nature of the Court system and the need to engage in discovery prior to Notice being issued due to the decision in *Clark*.

The new heightened standard announced in *Clark* —which has resulted in Plaintiff having to engage in discovery before he can file a Motion for Court-Facilitated Notice—has only

14

lengthening the period of time before notice can be issued. This is precisely what Judge Bush warned district courts about in *Clark* when stating that: *"*equitable tolling should be made available…*" Clark*, 68 F.4th at 1012 (Bush, J., concurring). It is why Judge White stated: "**district courts should freely grant equitable tolling to *would-be* opt-in plaintiffs**." *Id*. at 1017. (White, J., concurring and dissenting) (emphasis added).

Courts in the Sixth Circuit—including this Court—have frequently granted equitable tolling for **potential** opt-in plaintiffs before notice is approved and issued to them, and the Sixth Circuit's recent decision in *Clark* endorses this approach.   *See Cordell v. Sugar Creek Packing Co*., No. 2:21-cv-755, 2022 WL 4111175, *4 (S.D. Ohio Aug. 16, 2022) (granting equitable tolling for potential opt-in plaintiffs prior to making a notice determination due to stay pending the Sixth Circuit's decision in *Clark)*; *Duncan v. Magna Seating of America, Inc*., No. 22-12700, 2024 WL 1049467 (E.D. Mich. March 11, 2024)(granting equitable tolling through the date notice was issued); *Hyde v. Fricker's USA, LLC*, No. 1:22-cv-591, 2024 WL 4197903 (S.D. Ohio Sept. 16, 2024); *Snow v. JMI Reports, LLC*, Case No. 120-cv-1999 (S.D. Ohio April 21, 2023, J. Oliver); *Engel v. Burlington Coat Factory Direct Corp*., No. No. 1:11cv759, 2013 WL 5177184, *3 (S.D. Ohio Sept. 12, 2013) (granting equitable tolling for "potential opt-in plaintiffs" and tolling statute of limitations "until 60 days after notice is mailed to putative class members"); *Kampfer v. Fifth Third Ban*k, No. 3:14 cv 2849, 2016 WL 1110257, *7 (N.D. Ohio March 22, 2016) (granting equitable tolling for the "potential opt-in plaintiffs" and rejecting the defendants' argument that "such relief is premature"); *Torres v. Vitale's Italian Restaurant, Inc*., No. 1:18-cv-547, 2021 WL 5628781, *4 (W.D. Mich. Apr. 9, 2021) ("Although the potential opt-in plaintiffs are not yet parties to this case, the Court concludes that equitable tolling should apply to them.")**;** *Biggs v. Quicken Loans, Inc*., No. 10-cv-11928, 2014 WL 12661985, *5 (E.D. Mich. Feb. 19, 2014) (granting

15

equitable tolling for "potential opt-in plaintiffs"); *Davis v. Colonial Freight Systems, Inc.,* No. 3:16-CV-674, 2018 WL 11225871, *6-7 (E.D. Tenn. March 2, 2018) (granting notice and equitable tolling in the same order); *Thompson v. Direct General Consumer Products, Inc*., No. 3:12-cv-1093, 2014 WL 884494, *10 (M.D. Tenn. March 5, 2014) (granting conditional certification and equitable tolling for "potential opt-in plaintiffs" in the same order); *Rashad v. Mason's Professional Service, LLC*, No. 2:22-cv-02635, 2023 WL 5154534 (W.D. Tenn. Aug. 10, 2023) (noting that: "the *Clark* [*v. A&L Home Care*] panel produced a concurrence and partial dissent that both endorsed the idea that equitable tolling could apply to claims potentially time-barred due to any discovery delay, and such a court-order delay may now often take place before notice is ever issued."). In fact, Judge White specifically stated: "district courts should freely grant equitable tolling to **would-be** opt-in plaintiffs." *Id*. at 1017. (White, J., concurring and dissenting) (emphasis added).

In *Torres*, the Court held that: "[a]lthough the potential opt-in plaintiffs are not yet parties to this case, the Court concludes that equitable tolling should apply to them." *Torres*, 2021 WL 5628781, at *4 (emphasis added). In doing so, the Court noted that "[t]hese individuals are not hypothetical; they are real people who have been identified as current or former employees of defendants", and stated:

> [P]laintiff is relying on defendants to provide the names and addresses of the potential opt-in plaintiffs. They have yet to receive a court-ordered notice of their right to join this collective action, their ability to join this lawsuit is diminishing day by day, and their claims could expire due to circumstances beyond their control. Accordingly, this Court finds that the potential opt-in plaintiffs are entitled to equitable tolling because the delays during the collective-action certification process constitute "extraordinary circumstances" beyond their control.

*Id.*

Indeed, potential opt-ins plaintiffs—whose names and contact information remain in Defendant's possession—will not receive actual notice *or* constructive knowledge of their right to join this action until Court-approved notice of this action is issued. *See Struck v. PNC Bank, N.A.*, 931 F.Supp.2d 842, 846 (S.D. Ohio 2013); *Baden–Winterwood v. Life Time Fitness,* 484 F.Supp.2d 822, 828 (S.D. Ohio 2007); *Thompson v. Direct General Consumer Products, Inc.*, No. 3:12-cv-1093, 2014 WL 884494, *8-*9 (M.D. Tenn. 2014).  Towards that end, it is certainly reasonable for potential opt-ins who lack notice of this action to remain ignorant of their right to join. *See Struck*, 931 F.Supp.2d at 848 ("This Court finds that it is entirely reasonable that putative class members who received no actual notice of the pendency of this action would remain ignorant of the filing deadline."); *Thompson*, 2014 WL 884494, *9 (holding that "absent actual notice or some plausible means to learn of the tick-tock of the FLSA clock, Plaintiffs' ignorance of the filing deadline is reasonable."). A Judge Bush noted in his concurring opinion, potential opt-in plaintiffs "hold no responsibility to join [an FLSA collective action] until they receive notice."  *A&L Home Care,* 68 F.4th at 1011 (Bush, J., concurring).

Further, tolling the statute of limitations will not unduly prejudice Defendants. The purposes of statutes of limitations are to ensure fairness to defendants by notifying them of the claims they must defend before they grow stale. *American Pipe and Construction v. Utah*, 414 U.S. 538, 561 (1974) (Blackmun, J., concurring) (stating that "the purpose of the statute of limitations is to prevent surprises 'through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared'") (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49 (1944)). In *Struck*, this Court held that when the "Defendant 'had full knowledge that the named plaintiff brought the suit as a collective action on the date of the filing' and 'was fully aware of its scope of

17

potential liability'…[D]efendant is not in any way prejudiced by the tolling of the FLSA's statute of limitations for potential opt-in plaintiffs in this case." *Struck*, 931 F.Supp.2d at 848; *see also Thompson*, 2014 WL 884494, *9 ("Plaintiffs filed this suit in October 2012 as a nationwide collective action, laying out their legal theories of [Defendant's] statutory violations. [Defendant] has known the scope of its alleged liability since that time.") Here, Defendant has been aware of the collective action allegations, the scope of the proposed collective, and applicable limitations periods since the date they were served with the Complaint. Tolling the statute of limitations will not alter Defendant's liability or unfairly surprise it with new claims; instead, it will only serve to preserve the existing claims while allowing Defendant to adequately protect its own interests and contest the sufficiency of Plaintiff's current claims against them.

## VI.    PLAINTIFF'S PROPOSED OPT-IN DISCOVERY SHOULD BE APPROVED

Representative Plaintiff meets the burden to send court-supervised notice to the potential opt-in plaintiffs.  To facilitate prompt notice to the potential opt-in plaintiffs, Representative Plaintiff has attached hereto a set of opt-in discovery requests (*see* Exhibit 7).  Therein, Plaintiff seeks the identity, contact information, and pertinent employment dates of all former and current non-exempt hourly manufacturing/production employees of INOAC Exterior Systems, LLC employed at the Fremont, Ohio facility between May 9, 2021 and April 30, 2025.

The requested information is necessary to determine the contact information for the potential opt-in plaintiffs who will be eligible to be notified of this lawsuit in the event the Court grants the instant Motion.  In *Hoffman-La Roche*, the Supreme Court flatly affirmed the district court's approval of both expedited interrogatories seeking the names of potential opt-in plaintiffs and court-facilitated notice to the potential opt-ins.

## VII.    CONCLUSION

Plaintiff has met the burden of showing that there is a strong likelihood of similarity as he has alleged unified theories of Defendant's violations of the FLSA as admitted by Defendant's 30(b)(6) representative, as shown in Defendant's own documents, and as shown in Plaintiff's testimony.

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court authorize court-supervised notice and implement a procedure set forth in the accompanying Proposed Order (Exhibit 1), whereby potential opt-in plaintiffs are notified of Plaintiff's FLSA claims by issuing the Notice to Potential Class Members attached hereto as Exhibit 5, and given an opportunity to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

Respectfully submitted,


 /s/ Chastity L. Christy
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
chastity@lazzarolawfirm.com
anthony@lazzarolawfirm.com


*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2025, a copy of the foregoing was sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

<u>/s/ Chastity L. Christy</u>
One of the Attorneys for Plaintiff